# Pratt-Bey v. Monterio
# 5:17-CT-3291-BO

File number: 17CR002671

File number: 17CR060791

File number: 17CR060792



**State of North Carolina**
**General Court of Justice**
**Superior Court District 12**

JAMES FLOYD AMMONS, JR.
SENIOR RESIDENT SUPERIOR COURT JUDGE

POST OFFICE BOX 363
FAYETTEVILLE, N.C.
28302
TELEPHONE: (910) 475-3016
Fax (910) 475-3017

CLAIRE V. HILL
RESIDENT SUPERIOR COURT JUDGE

MARY ANN TALLY
RESIDENT SUPERIOR COURT JUDGE

GALE M. ADAMS
RESIDENT SUPERIOR COURT JUDGE

# MEMORANDUM

To:        Mr. Harold Pratt-Bey
121 McCoy Lane
Eagle Springs, NC 27242

From:     Superior Court Judges' Office

Date:      December 6, 2017

File No.    17CR 60791, 60792

We are in receipt of

Your:      Letter

Dated:    Not Dated

Your matter is presently pending in the District Court Division and thus, the Superior Court has no jurisdiction. Accordingly, your letter has been delivered to the office of the District Court Judges.

# RELEASE REPORT

## INMATE: PRATT, HAROLD EDWARD JR (B M, 12/25/1991)

| | |
|---|---|
| Booking # | 208017 |
| Booked | 10/10/2017 11:30 |
| Released | 11/08/2017 01:10:00 |
| Released By | Nelms, S |
| Released To | SELF |
| Reason | TIME SERVED |
| Notes | RELEASED FOR TIME SERVED PER JUDGE BAGGETT[11/08/2017 02:05, KROSE, CCSO] |



Affidavit of Fact

Exhibit A

Enclosed are International Treaty violations involving human trafficking and corporate person's generating income and not reporting the information to the Internal revenue Services

" Speeding, running stop signs, traveling without license plates, or registration are not threats to the public safety, and thus, are not arrestable offences

*[Christy v. Elliot, 216 I 131*

*HE 1035, LRA Ns 1905-1910]*

From the Declaration of Human Rights- United Nations General Assembly- Resolution #217 December 10, 1948

Article 15:

1. Everyone has the right to a nationality
2. No one shall be arbitrarily deprived of his nationality or denial the right to change his nationality

From The Declaration of the Rights of the child- United Nations General assembly-1989

Princple III: Every child shall be entitled, from his birth, to a name and nationality

Definition of I.D. Card that gives identifying information such as name, age, and organizational membership, about a person who then carries a card and uses it to establish his or her identity, also called "identity card"- termont's with them Websters Illustrated Encyclopedia Dictionary. 1987.

AMENDEMENT IV of The American Constitution 1791.

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"With regard particularly to the U.S. Constitution, it is elementary that a Right secured or protected by that document **cannot be overthrown or impaired by any state police authority.**" *Donnolly vs. Union Sewer Pipe Co. , 184 US 540; Lafarier vs. Grand Trunk R.R. Co. , 24 A. 848; O'Neil vs. Providence Amusement.Co. , 108 A. 887.*

When **officers detained** appellant for the purpose of requiring him to identify himself, they performed a **<u>seizure</u> of his person** subject to the requirement of the **<u>Fourth Amendment</u>**... The Fourth Amendment , of course, applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest... **Whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person,** and the Fourth Amendment requires that the seizure be 'reasonable'.

[NATIONALS OR CITIZENS]

ARE NOT REQUIRED

TO SHOW IDENTIFICATION TO A POLICE OFFICER

The Police Officer swears by Oath to uphold the United States Constitution as an Officer Of Law. Supreme Court Decisions are Considered the Law of the Land in Regards to Constitutionally Protected Rights, and they cannot be interpreted, or re-interpreted, as they are 'stare decisis' (already reviewed and clearly described as Law).

" The Constitution is a written instrument. As Such, it's meaning does not alter. That Which it meant when it was adopted, it means now." *South Carolina v. U.S. 437, 448(1905)*

"State Police Powers extend only to immediate threats to Public Safety, health, welfare, etc." *Michigan v, Duke 266 476 LED*

"An illegal arrest is an assault and battery. The person so attempted to be restrained of his liberty has the same right to use force in defending himself as he would in repelling any other assault and battery." *State v. Robinson, 145 ME. 77, 72 ATL. 260.*

"Each person has the right to resist an unlawful arrest. In such a case, the person attempting the arrest stands in the position of a wrongdoer and may be resisted by the use of force, as in self-defense." *State v. Mobley, 240 N.C. 476, 83 S.E. 2d 100.*

"One may come to the aid of another being unlawfully arrested, just as he may where one is being assaulted, molested, raped or kidnapped. Thus it is not an offense to liberate one from the unlawful custody of an officer, even though he may have submitted to such custody, without resistance." *Adams v. State, 121 Ga. 16, 48 S.E. 910.*

"In which The United States Supreme Court ruled That a police officer could <u>not</u> arrest a citizen merely for refusing to present identification." *Kolender v. Lawson (461). 352, 1983*

"The **right** of a citizen to travel upon the public highways and to transport his property thereon, by horse-drawn carriage, wagon, or **automobile**, is **not a mere privilege which may be permitted or prohibited at will**, but a **common right** which he has under his right to life, **liberty** and the pursuit of happiness. Under this constitutional guaranty one may, therefore, under normal conditions, **travel at his inclination** along the **public highways** or in public places, and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's rights, he will be **protected**, not only in his person, but in his **safe conduct.**" *Thompson v. Smith, 154 SE 579, 11 American Jurisprudence, Constitutional Law, section 329, page 1135*

"The right of the Citizen to travel upon the **public highways** and to transport his property thereon, in the ordinary course of life and **business**, is a common right which he has under the right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety. It includes the right, in so doing, to use the ordinary and usual conveyances of the day, and under the existing modes of travel, **includes** the right to drive a horse drawn carriage or wagon thereon or to **operate an automobile** thereon, for the usual and ordinary purpose of life and **business.**" *Thompson vs. Smith, supra.; Teche Lines vs. Danforth, Miss., 12 S.2d 784*

' When acting to enforce a statute and its subsequent amendments to the present date, the judge at the municipal court is acting as an administrative officer and not in a judicial capacity; courts in administering or enforcing statutes do not act judicially, but merely ministerially". *Thompson v. Smith, 154 SE 583.*

"... the **right** of the citizen to **drive** on a **public street** with freedom from police interference... is a **fundamental** constitutional **right**" *White, 97 Cal.App.3d.141, 158 Cal.Rptr. 562, 566-67 (1979)*

"citizens have a **right** to **drive** upon the public streets of the District of Columbia or any other city absent a constitutionally sound reason for limiting their access." *Caneisha Mills v. D.C. 2009*

"The use of the **automobile** as a necessary adjunct to the earning of a livelihood in modern life requires us in the interest of realism to conclude that the RIGHT to use an **automobile** on the **public highways** partakes of the nature of a liberty within the meaning of the Constitutional guarantees. . ." *Berberían v. Lussier (1958) 139 A2d 869, 872, See also: Schecter v. Killingsworth, 380 P.2d 136, 140; 93 Ariz. 273 (1963).*

"The right to operate a **motor vehicle** [an automobile] upon the public streets and highways is not a mere privilege. It is a right of liberty, the enjoyment of which is protected by the guarantees of the federal and state constitutions." *Adams v. City of Pocatello, 416 P.2d 46, 48; 91 Idaho 99 (1966).*

"A traveler has an **equal right** to employ an **automobile** as a means of transportation and to occupy the public highways with other vehicles in common use." *Campbell v. Walker, 78 Atl. 601, 603, 2 Boyce (Del.) 41.*

"The owner of an automobile has the same right as the owner of other vehicles to use the highway,* * * A traveler on foot has the **same right** to the use of the public highways as an **automobile** or any other **vehicle**." *Simeone v. Lindsay, 65 Atl. 778, 779; Hannigan v. Wright, 63 Atl. 234, 236.*

"The RIGHT of the citizen to **DRIVE** on the public street with freedom from police interference, unless he is engaged in suspicious conduct associated in some manner with criminality is a FUNDAMENTAL CONSTITUTIONAL RIGHT which must be protected by the courts." *People v. Horton 14 Cal. App. 3rd 667 (1971)*

"The right to make use of an **automobile** as a **vehicle** of travel long the highways of the state, is no longer an open question. The owners thereof have the **same rights** in the roads and streets as the drivers of horses or those riding a bicycle or traveling in some other **vehicle**." *House v. Cramer, 112 N.W. 3; 134 Iowa 374; Farnsworth v. Tampa Electric Co. 57 So. 233, 237, 62 Fla. 166.*

"The **automobile** may be used with safety to others users of the highway, and in its proper use upon the highways there is an **equal right** with the users of other vehicles properly upon the highways. The law recognizes such right of use upon general principles. *Brinkman v Pacholike, 84 N.E. 762, 764, 41 Ind. App. 662, 666.*

"The law does not denounce **motor carriages,** as such, on public ways. They have **an equal right** with other vehicles in common use to occupy the streets and roads. It is improper to say that the driver of the horse has rights in the roads superior to the **driver of the automobile**. Both have the **right** to use the easement." *Indiana Springs Co. v. Brown, 165 Ind. 465, 468.*

"A highway is a public way open and free to any one who has occasion to pass along it on foot or with **any kind of vehicle**." *Schlesinger v. City of Atlanta, 129 S.E. 861, 867, 161 Ga. 148, 159; Holland v. Shackelford, 137 S.E. 2d 298, 304, 220 Ga. 104; Stavola v. Palmer, 73 A.2d 831, 838, 136 Conn. 670*

"There can be no question of the right of **automobile owners** to occupy and use the public streets of cities, or highways in the rural districts." *Liebrecht v. Crandall, 126 N.W. 69, 110 Minn. 454, 456*

"The word **'automobile'** connotes a pleasure vehicle designed for the transportation of persons on highways." *American Mutual Liability Ins. Co., vs. Chaput, 60 A.2d 118, 120; 95 NH 200*

**Motor Vehicle:** 18 USC Part 1 Chapter 2 section 31 definitions:

"(6) Motor vehicle. - The term **"motor vehicle"** means every description of carriage or other contrivance propelled or drawn by mechanical power **and** used for **commercial** purposes on the highways..." 10) The term "used for commercial purposes" means the carriage of persons or property for any fare, fee, rate, charge or other consideration, or directly or indirectly in connection with any business, or other undertaking intended for profit.

"A motor vehicle or automobile for hire is a motor vehicle, other than an automobile stage, used for the transportation of persons <u>for which **remuneration** is received</u>." *International Motor Transit Co. vs. Seattle, 251 P. 120*

The term 'motor vehicle' is different and broader than the word 'automobile.'" City of Dayton vs. DeBrosse, 23 NE.2d 647, 650; 62 Ohio App. 232

"Thus self-driven vehicles are classified according to the **use** to which they are put rather than according to the means by which they are propelled" *Ex Parte Hoffert, 148 NW 20*

"The **Supreme Court**, in **Arthur v. Morgan**, 112 U.S. 495, 5 S.Ct. 241, 28 L.Ed. 825, held that **carriages were properly classified as household effects**, and we see no reason that **automobiles** should not be similarly disposed of." *Hillhouse v United States, 152 F. 163, 164 (2nd Cir. 1907).*

"...a citizen has the right to travel upon the public highways and to transport his property thereon..." *State vs. Johnson, 243 P. 1073; Cummins vs. Homes, 155 P. 171; Packard vs. Banton, 44 S.Ct. 256; Hadfield vs. Lundin, 98 Wash 516, Willis vs. Buck, 263 P. I 982; Barney vs. Board of Railroad Commissioners, 17 P.2d 82*

"The use of the highways for the purpose of travel and transportation is **not a mere privilege,** but a common and **fundamental Right** of which the public and the individual cannot be rightfully deprived." *Chicago Motor Coach vs. Chicago, 169 NE 22; Ligare vs. Chicago, 28 NE 934; Boon vs. Clark, 214 SSW 607; 25 Am.Jur. (1st) Highways Sect.163*

"the right of the Citizen to travel upon the highway and to transport his property thereon in the ordinary course of life and business... is the usual and ordinary right of the Citizen, a **right** common to all." *Ex Parte Dickey, (Dickey vs. Davis), 85 SE 781*

"Every Citizen has an unalienable RIGHT to make use of the **public highways** of the state; every Citizen has full freedom to travel from place to place in the enjoyment of life and liberty." *People v. Nothaus, 147 Colo. 210.*

"No State government entity has the power to allow or deny passage on the highways, byways, nor waterways... transporting his vehicles and personal property for either recreation or business, but by being subject only to local regulation i.e., safety, caution, traffic lights, speed limits, etc. **Travel is not a privilege requiring licensing, vehicle registration, or forced insurances.**" *Chicago Coach Co. v. City of Chicago, 337 Ill. 200, 169 N.E. 22.*

"Traffic infractions are not a crime." *People v. Battle*

"Persons faced with an unconstitutional **licensing** law which **purports** to require a **license** as a prerequisite to exercise of **right**... may **ignore** the law and engage with **impunity** in exercise of such right." *Shuttlesworth v. Birmingham 394 U.S. 147 (1969).*

**"The word 'operator' shall not include any person who solely transports his own property and who transports no persons or property for hire or compensation."** *Statutes at Large California Chapter 412 p.83*

"Highways are for the use of the traveling public, and all have the right to use them in a reasonable and proper manner; the use thereof is an inalienable right of every citizen." *Escobedo v. State 35 C2d 870 in 8 Cal Jur 3d p.27*

"RIGHT -- A legal RIGHT, a constitutional RIGHT means a RIGHT protected by the law, by the constitution, but government does not create the idea of RIGHT or original RIGHTS; it acknowledges them. . . " *Bouvier's Law Dictionary, 1914, p. 2961.*

**"Those who have the right to do something cannot be licensed for what they already have right to do as such license would be meaningless."** *City of Chicago v Collins 51 NE 907, 910.*

**"A license means leave to do a thing which the licensor could prevent."** *Blatz Brewing Co. v. Collins, 160 P.2d 37, 39; 69 Cal. A. 2d 639.*

"**The object of a license is to confer a right or power, which does not exist without it.**" *Payne v. Massey (19___) 196 SW 2nd 493, 145 Tex 273.*

"**The court makes it clear that a license relates to qualifications to engage in profession, business, trade or calling; thus, when merely traveling without compensation or profit, outside of business enterprise or adventure with the corporate state, no license is required of the natural individual traveling for personal business, pleasure and transportation.**" *Wingfield v. Fielder 2d Ca. 3d 213 (1972).*

"If [state] officials construe a vague statute unconstitutionally, the citizen may take them at their word, and act on the assumption that the **statute is void.**" *Shuttlesworth v. Birmingham 394 U.S. 147 (1969).*

"The **right to travel** (called the right of free ingress to other states, and egress from them) is so **fundamental** that it appears in the Articles of Confederation, which governed our society before the Constitution." *Paul v. Virginia.*

"[T]he **right to travel** freely from State to State ... is a **right broadly assertable** against private interference as well as governmental action. Like the right of association, it is a **virtually unconditional personal right, guaranteed** by the Constitution to us **all.**" *U.S. Supreme Court, Shapiro v. Thompson*

EDGERTON, Chief Judge: "Iron curtains have no place in a free world. ...Undoubtedly the **right of locomotion**, the **right to remove** from one place to another according to **inclination**, is an attribute of personal liberty, and the right, ordinarily, of free transit from or through the territory of any State is a right **secured** by the Constitution.' *Williams v. Fears, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186.*

"Our nation has thrived on the principle that, outside areas of plainly harmful conduct, every American is left to shape his own life as he thinks best, do what he pleases, **go where he pleases.**" *Id., at 197. Kent vs. Dulles see Vestal, Freedom of Movement, 41 Iowa L.Rev. 6, 13—14.*

"The validity of restrictions on the freedom of movement of particular individuals, both substantively and procedurally, is precisely the sort of matter that is the peculiar domain of the courts." *Comment, 61 Yale L.J. at page 187.*

"a person detained for an investigatory stop can be questioned but is "not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest." *Justice White, Hiibel*

"Automobiles have the right to use the highways of the State on an equal footing with other vehicles." *Cumberland Telephone. & Telegraph Co. v Yeiser 141 Kentucy 15.*

"Each citizen has the absolute right to choose for himself the mode of conveyance he desires, whether it be by wagon or carriage, by horse, motor or electric car, or by bicycle, or astride of a horse, subject to the sole condition that he will observe all those requirements that are known as the law of the road." *Swift v City of Topeka, 43 Kansas 671, 674.*

The Supreme Court said in *U.S. v Mersky (1960) 361 U.S. 431*: An administrative regulation, of course, is not a "statute."

"A traveler on foot has the same right to use of the public highway as an automobile or any other vehicle." *Cecchi v. Lindsay, 75 Atl. 376, 377, 1 Boyce (Del.) 185.*

"Automotive vehicles are lawful means of conveyance and have equal rights upon the streets with horses and carriages." *Chicago Coach Co. v. City of Chicago, 337 Ill. 200, 205; See also: Christy v. Elliot, 216 Ill. 31; Ward v. Meredith, 202 Ill. 66; Shinkle v. McCullough, 116 Ky. 960; Butler v. Cabe, 116 Ark. 26, 28-29.* …automobiles are lawful vehicles and have equal rights on the highways with horses and carriages. *Daily v. Maxwell, 133 S.W. 351, 354. Matson v. Dawson, 178 N.W. 2d 588, 591.)*

"A farmer has the same right to the use of the highways of the state, whether on foot or in a motor vehicle, as any other citizen." *Draffin v. Massey, 92 S.E.2d 38, 42.*

"Persons may lawfully ride in automobiles, as they may lawfully ride on bicycles." *Doherty v. Ayer, 83 N.E. 677, 197 Mass. 241, 246; Molway v. City of Chicago, 88 N.E. 485, 486, 239 Ill. 486; Smiley v. East St. Louis Ry. Co., 100 N.E. 157, 158.*

"A soldier's **personal automobile** is part of his '**household goods**[.]'" *U.S. v Bomar, C.A.5(Tex.), 8 F.3d 226, 235" 19A Words and Phrases - Permanent Edition (West) pocket part 94.*

"[I]t is a jury question whether … an automobile … is a motor vehicle[.]" *United States v Johnson, 718 F.2d 1317, 1324 (5th Cir. 1983).*

"A judge ceases to sit as a judicial officer because the governing principle of administrative law provides that courts are prohibited from substituting their evidence, testimony, record, arguments, and rationale for that of the agency. Additionally, courts are prohibited from substituting their judgement for that of the agency, Courts in administrative issues are prohibited from even listening to or hearing arguments, presentation, or rational." *ASIS v. US, 568 F2d 284.*

" Ministerial officers are incompetent to receive grants of judicial power from the legislature, their acts in attempting to exercise such powers are necessarily nullities." *Burns v. Sup., Ct., SF, 140 Cal.1.*

"No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it" *Cooper v. Aaron, 358 U.S. 1, 78 S. Ct. 1401 (1958)*

"The court is to protect against any encroachment of Constitutionally secured liberties." *Boyd v. U.S., 116 U.S. 616*

"Officers of the court have no immunity, when violating a Constitutional right, from liability. For they are deemed to know the law." *Owen v. Independence, 100 S.C.T. 1398, 445 US 622*

"The courts are not bound by an officers interpretation of the law under which he presumes to act." *Hoffsomer v. Hayes, 92 Okla 32, 227 F. 417*

# THE MOORISH NATIONAL REPUBLIC

# THE MOORISH DEVINE AND NATIONAL MOVEMENT OF THE WORLD

## Aboriginal and Indigenous Natural Peoples of North-West Amexem

North America

### Affidavit of Fact

### Exhibit B

### Criminal Complaint violation of Secured Constitution Treaty Right, By Person Working For Or by Cohesion With THE CITY OF FAYETTEVILLE,

### CUMBERLAND COUNTY JAIL

Nunc Protunc

Mayor Nat Robertson

- Stop and frisk hate crime
- Conspiracy
- Piracy
- Fraud
- Stalking
- Larceny
- Human Trafficking
- Perjury
- Peonage
- Extortion
- Kidnapping
- Ransom
- Racketeering
- Illegal arrest
- assault
- battery

I am, Harold Pratt-Bey, Moorish American; a Natural Person, 'In Propria Persona', and not 'Pro-se'; and not an artificial, corporate person, num de guerre, strawman, nor any other fraudulent, misrepresentation, as scribed in all CAPITAL LETTERS, as dishonorably placed before this court on paper, and with corrupt and injurious intent, by the unclean hand of others. I state for the record that no foreign persons, nor entities represented by them, have any lawful or credible authority to 'Represent' me.

On August 16th, 2017 at approx. 11:40 pm est., we were illegally apprehended, and stopped of my travels. P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE attempted and succeeded in an unlawful kidnapping, human trafficking, ransom, extortion, unreasonable/unwarranted search and seizure, animal abuse, animal cruelty, assault and battery, damage to personal property, damage to property, unlawful arrest, color of law violations, failure to properly identify, and unconstitutional abuse of power.

While slowly approaching a yellow light at an intersection, P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE, was casually taking a left turn going towards the direction we had just came from. Afterwards light turned green and we casually proceeded to go on our travels. Fifteen seconds later we can see P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE, Illegally perform a U-turn in the middle of the highway. After performing this action, P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE, stalked us from ten yards away at a diagonal position. Stalking us for several minutes; slowing down when we slow down, speeding up when we speed up. Then just as we are a few feet from the CITY OF FAYETTEVILLE city limits sign, P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE turns on his blue lights. Knowing we did nothing wrong we pull over and ask P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE, whenever he reaches the vehicle his reason for pulling us over. P.J. MONTERIO doing business as a

POLICE OFFICER for the CITY OF FAYETTEVILLE then proceeds to lie to us and states that he pulled us because my plates did not match the vehicle. Claiming the plates were coming back for a white Lincoln, instead of the red Chevy Cruze we were currently in. Knowing this to be a lie (because, 1. The vehicle was just purchased brand new off a car lot, all paperwork correct and 2. In order for P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE to have seen my plates in the first place would be if he was riding behind me instead of committing the illegal and unjustifiable U-turn) I asked P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE to see his business card. P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE then told him that he did not have a business card and tried to coax me into giving up my license and registration. Again, knowing we did nothing wrong and not knowing who P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE was or his intentions, I again asked for his business card, in which he again denied to having one. At that same moment another officer approached the vehicle shining his flashlight into the vehicle. Feeling as though my brother's life and my life (my brother was a guest in the vehicle at the time) was in danger, I dialed 911. Whenever I got a hold of the operator they informed me that they were part of the Fort Bragg Police and not the CITY OF FAYETTEVILLE police. All the while I was on the phone P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE continued to make threats of arresting us, so I asked if I could speak to his superior, the sheriff, and the mayor Nat Robertson. P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE proceeded to bring a new officer onto the scene up also stating they were his superior, B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE, a specialist. B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE walked up to the window stating we were pulled over for my tags. I then asked to see her business card. B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE then stated she didn't have one and asked for my license and registration. I then told B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE

that I would like to speak to the sheriff, her superior, and the mayor. B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE then told me she was not associated with the sheriff and she would not get the mayor Nat Robertson, down there. I then asked B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE what was the reason of us being pulled over. B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE stated that the tags did not match the vehicle, and again asked for my license and registration. At this time there are four police cars on the scene, which has us fearful for our lives. I then reminded B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE that according to Christy v. Elliot, 216 I 131 HE 1035, LRA Ns 1905-1910 "Speeding, running stop signs, traveling without license plates, or registration are not threats to the public safety, and thus, are not arrestable offences", and also that according to Kolender v. Lawson (461). 352, 1983 "In which The United States Supreme Court ruled that a police officer could not arrest a citizen merely for refusing to present identification.". I then asked B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE if there was an accident or an emergency, when she told me no I then asked "Am I free to go?". That's when B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE said no and refused to let us leave. After about twenty more minutes of going back and forth with this B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE walked away from the vehicle, while three other officers including P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE continued to just stand around the vehicle shining their flashlights through the windows. At this point we've already been beside the road for two hours, of officers coming back and forth to the window and my brother and I being denied to go about our travels. That's when S. BATES doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE walked up to the window stating he was the sergeant and asked for my license and registration. I then went through the same spill with him as I did with B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE; asking for a business card and reminding him of

Christy v. Elliot, and Kolender v. Lawson. That's when S. BATES doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE got angry and told me I was quoting nonsense and he had the only authority over us. After another twenty minutes of asking if it was a crime or emergency and if he was free to go, and being told no. S. BATES doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE then started communicating threats of busting out the window and destroying the vehicle. After five more minutes of threatening us, S. BATES doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE then randomly said that the vehicle smelled like marijuana. This statement coming only after two and a half hours of initially being pulled over, having at least four officers walk up to the window, not being said by any other officer throughout that time period until S. BATES doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE got angry. S. BATES doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE continued to threaten us and threaten to destroy the vehicle and bust the windows out. Even threaten me with warrants for my arrest and resisting an officer while I was just sitting there. After another 5 minutes of threats S. BATES doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE finally busted out the left rear window, and communicating threats to bust out the driver window, he then instructed S. MOSELEY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE to "long arm" him. That's when my brother took his seat beat off instructing me to do the same and calmly exited the vehicle under threat, deress, and distortion. That's when P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE handcuffed my brother and took him to a police car ( ALL WHICH I HAVE RECORDED). While in the first police car B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE turned the heat all the way up when he asked if she could turn it down because he was hot and could not breathe. Before switching him to another police car B. GUNTHERY doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE joked with another officer about my brother having a gun, stating "did ya'll search him, cause if I get shot it's on ya'll". After putting me and my brother in separate police cars both with the heat turned up after asking it to be cut

down and putting my brothers puppy on a leash choking him out, and threatening to take him to the dog pound, all the officers stood beside the police car my brother was in for about twenty minutes in a huddle discussing. After another fifteen minutes they finally brought the K-9 out to the scene. The K-9 sniffed the vehicle multiple times for fifteen minutes not indicating a sign of smelling anything. That's when the K-9 officer tapped on the vehicle giving the K-9 the command to sit as if he smelled something, so the officers could have the right to search the vehicle. After another twenty minutes the officers let me and my brothers puppy go and took my brother into the CUMBERLAND COUNTY DETENTION CENTER to process him for booking.

On October 10th, 2017 at approx. 11:30 am est., I was illegally apprehended, and detained. T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE attempted and succeeded in an unlawful kidnapping, human trafficking, ransom, extortion, unlawful arrest, color of law violations, failure to properly identify, and unconstitutional abuse of power.

On the morning of October 10th my brother and I arrived to court where we were instructed by a bailiff we would have to either drive all the way back 2 hours or would have to go buy some pants. After leaving and returning from spending precious time, gas, and money, we sat in the crowd waiting for our names to be called so we could be accounted for being there.

As we sit there we watch as P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE nervously keeps moving around in his chair. That's when the DA walks over to P.J. MONTERIO doing business as a POLICE OFFICER for the CITY OF FAYETTEVILLE says something to him, just by his reaction I can tell it's about me and my brother's case. We watch as they talk for ten minutes before the DA tells T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE that they might as well go ahead and take care of this, and skips the calendar and goes to my case. My brother walks up and T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE reads off the charges. When he's finished my brother calmly asks T.

BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE, what is his status, what is his name, and what is his nationality. Upon hearing this T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE, whole demeanor changes up. He becomes angry screaming "Don't try to come in here with that Moorish nation bull crap defense, a lot of people come in here and try that". T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE then proceeds to commit perjury in court stating "the CITY of FAYETTEVILLE doesn't acknowledge the Moorish nation, and neither does the state of North Carolina." T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE then proceeds to yell and have my brother fill out a continence sheet (which he signed under threat, deress, and distortion) while screaming out " abandon this Moorish nation bull crap." my brother just silently stood there. T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE then instructs some lawyer to take me to the back of the court room and talk to me, also telling the bailiff not to let me leave the court room. The lawyer took me to the back of the court room where he tried to persuade me to do what the judge said and trying to offer his services for a fee of $300. The whole time I'm telling him no, T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE stares me down while in the midst of hearing another case. Five minutes I get called back up to the front and T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE states " are you ready to abandon this Moorish nation bull crap so we can proceed with a trail. Again I calmly asked, for the record, his status, his name, and his nationality. He then became angry and told the bailiffs he had surrounding me the whole time to arrest him. Then after T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE states " for the record let it be known that he asked to speak to the lawyer, and that he would not give up the Moorish defense." My brother was taken to the back of the courtroom by the same lawyer who also tried to persuade me, offering his services for a fee of $300 dollars. Then for 30 days the CUMBERLAND COUNTY DENTENTION CENTER held me kidnapped, under cruel and unusual conditions.

Further more on January 9th, 2018 at approx.1:30 pm est., T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE attempted and succeeded in unlawful ransom, extortion, color of law violations, failure to properly identify, perjury, and unconstitutional abuse of power.

On January 9th, following a hour and a half lunch break. T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE secretly instructed B JOHNSON doing business as a BAILIFF for the CITY OF FAYETTEVILLE, D.J. CALDERA doing business as a BAILIFF for the CITY OF FAYETTEVILLE, GUNDIFF doing business as a BAILIFF for the CITY OF FAYETTEVILLE, and two other bailiffs to surround the courtroom. Next T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE called me and my brother up in front of him at the same time to discuss our cases. Already having sent off all the proper paperwork it was to my understanding that my brother and I were only there only in special appearance. It was also to our understanding that T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE knew and understood this as well. Before opening our mouths to speak, T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE immediately goes on a rant about the Moorish Nation and how he has been trained to deal with cases with those defenses, but then contradicts himself committing perjury (for the second court appearance in a row) by stating that the CITY OF FAYETTEVILLE does NOT acknowledge the Moorish Nation, and neither does the state of NORTH CAROLINA (even though ANTHONY G. CHAVONNE proclaimed in 2012 this week to be MOORISH AMERICAN WEEK). As T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE continues to commit perjury during court, during Moorish American week, he then began to communicate threats. Already having the bailiffs surrounding us, putting us under threat, duress, and coercion T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE then began to threaten to hold us for contempt for 30 days, trying to coerce my brother and I into renouncing our beliefs and who we are, having already gotten away with this kidnapping scheme before. After his efforts proved to be futile, T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE

began to commit perjury in court by stating he assigned me a public defender and other misleading information about how he kidnapped me before. After realizing he made a mistake T. BAGGETT doing business as a JUDGE for the CITY OF FAYETTEVILLE then began to try to proceed with the trail, after agreeing then repeatedly denying our motion for a continuance.

It is our intentions to go viral with the evidence he have recorded on our phone, and we also intend on suing all named parties for their "full personal and professional pay capacity" as a police officer, magistrate, and judge. We also have no intentions on ever returning to the CITY of FAYETTEVILLE or any of its establishments. Nor will anyone we are associated with. The CITY of FAYETTEVILLE has already caused us enough pain and grief, and loss of opportunities

I am: *Harold Pratt B*, Authorized Representative
Natural Person, In Propia Persona
Ex Relation ( HAROLD PRATT ), without prejudice
All Rights Reserved U.C.C 1-207